KIMBER *v.* MICHIGAN LIGHT CO., NOW CONSUMERS
POWER CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — DE-
PENDENCY TESTED BY CONDITIONS AT TIME OF EMPLOYEE'S DEATH.
Under the workmen's compensation act, the question of
dependency is to be tested by conditions existing at the
time of the accidental death of the employee.[1]

2. SAME — WHERE FACTS UNDISPUTED QUESTION OF DEPENDENCY
ONE OF LAW.
On certiorari to review an award of the department of
labor and industry under the workmen's compensation
act, where the facts as to plaintiff's dependency are
undisputed, the question is one of law, and therefore the
finding of the department is not binding upon the Supreme
Court.[2]

3. WORDS AND PHRASES—"PRESUMPTION" DEFINED.
A presumption is a negative or affirmative inference as
to the existence of a fact which probable reasoning and
common sense draw from proved surrounding facts and
circumstances.[3]

4. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—WIFE
NOT A DEPENDENT OF HUSBAND WHERE MARRIED TO ANOTHER
MAN—WIFE NOT JUSTIFIED IN LIVING APART FROM HUSBAND BY
FACT OF WHICH SHE HAS NO KNOWLEDGE.
Where a wife, whose husband left her in England in
1913, temporarily, as they then supposed, not having heard
from him after he left, in 1917 married another man with
whom she had been living in adulterous relations, she
may not claim the benefit of Act No. 64, Pub. Acts 1919,
amending the workmen's compensation act, providing that
a wife living apart from her husband for justifiable cause
is conclusively presumed to be wholly dependent upon
him, because she had fixed her status in domestic relations
previous to the enactment thereof and continued it un-
changed thereafter to the time of the husband's accidental
death in Michigan in 1921; nor may she rely for justifica-

[1]Workmen's Compensation Acts, § 49; [2]Id., § 128; [3]Evidence,
22 C. J. § 26.
On power of court to issue or to honor letters rogatory, see
note in 9 A. L. R. 966.

tion upon the fact that the husband had married again, where she did not learn thereof until after his death.[4]

Certiorari to Department of Labor and Industry. Submitted October 29, 1924. (Docket No. 66.) Decided April 3, 1925.

Emily Kimber presented her claim for compensation against the Michigan Light Company, now Consumers Power Company, for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant brings certiorari. Reversed, and order vacated.

*Walter D. Kline,* for appellant.

*Doty & Cram,* for appellee.

STEERE, J. One James Kimber was killed on February 15, 1921, by a gas explosion while in defendant's employ at Pontiac, Michigan. Plaintiff, Emily Kimber, made claim as his wife for compensation under the industrial accident law. Her home is in England, where she has resided all her life, and the proofs as to her are by testimony taken under letters rogatory issued by the department of labor and industry and authenticated copies of public records in London as to marriage, birth, etc. The arbitration proceedings were had before a deputy commissioner who made an award to plaintiff of $14 per week for 300 weeks, from which an appeal was made to the full board, consisting of three commissioners. But two commissioners heard the case. Their views were not in harmony and separate findings were filed by each, one in support of the deputy's award and one leading to its reversal. One found that plaintiff was at the date of the accident living apart from her husband, James Kimber, for a justifiable cause, as he had de-

[4]Workmen's Compensation Acts, § 50.

serted her, and she was therefore conclusively presumed dependent on him for support; the other that neither desertion by deceased or justifiable cause existed at the date of the accident, as she was then married to and living with another husband who was supporting her and with whom she had lived in meretricious relations for some time before marrying him.   Whether the third member of that commission is dead or alive the record does not disclose, but the dissenting commissioner whose findings are last mentioned ultimately signed with the other an order, dated January 5, 1924, sustaining the award of the deputy, saying in that connection over his official signature:

"I have signed the order sustaining the award of the deputy commissioner so that the interested parties may go to a higher court if they desire.   I have made a finding setting forth some views not covered by the finding signed by the other member of the commission handling with me compensation matters."

Under various objections and exceptions timely raised for review it is urged for defendant that the order of affirmation is void because only supported by the individual findings of one member of the commission, at the time of the hearing and before the testimony on which it was based had been taken . plaintiff had voluntarily withdrawn her claim, the testimony taken in England was incompetent because the statute creating the commission confers upon it no authority to issue letters rogatory, and under the undisputed testimony no conclusive presumption was raised that she was at the time of his death dependent on deceased for support, but the contrary is conclusively shown by her own testimony.

While no witness who knew plaintiff's husband either in England or America identified the man killed in Pontiac as the same, there was perhaps room for

that inference, in the discretion of the commission, from identity of names and other circumstances.

Prior to taking the testimony submitted to the commission arrangements were made to take the testimony of witnesses in England before a notary public, to be filed with the commission. At the appointed time and place both parties appeared, represented by their attorneys. Plaintiff tendered no evidence but withdrew her claim as appears by the return of the notary designated to take the testimony, dated November 18, 1921. Omitting title of the case, etc., it reads as follows:

"On this first day of November, A. D. 1921, appeared before me Mr. A. Dallas Brett, solicitor, of Egham, in the county of Surrey, England, on behalf of the claimants in the above mentioned proceedings, and Mr. Russell H. Porter, counsellor at law, of Inner Temple, London, for the employer mentioned in the said proceedings, when Mr. Dallas Brett declared that on behalf of his clients he withdrew any claim or claims put forward on their behalf and tendered no evidence in support thereof.

(Seal)                    "JOHN D. VENN,
                    Notary Public, London."

On February 20, 1922, counsel for plaintiff wrote the commissioner of labor and industry referring to a letter from the commission advising that the matter was being held open at their request, and stating they desired to file a motion "for the purpose of reopening the case up and taking testimony," to which they received answer that the files would remain open until such times as proof regarding dependency was presented in accordance with certain cited rules 17, etc. Counsel then applied for letters rogatory which were issued by the commission, against defendant's objection, and plaintiff's testimony was taken under them before a designated notary public in London. Upon the validity of the letters rogatory counsel for

defendant cite 18 C. J. pp. 653, 654; *In re Martinelli,* 219 Mass. 58 (106 N. E. 557); *Ex parte Taylor,* 110 Tex. 331 (220 S. W. 74, 9 A. L. R. 963). We find no occasion to pass upon that question as in our opinion the application should be finally disposed of on its merits.

The question of dependency is to be tested by conditions existing at the time of the accidental death of employee. Briefly outlined, her testimony shows that she was married to James Kimber in England some time in January, 1900. They lived together until 1908, during which time two daughters were born to them, the youngest of whom was 16 years old when this case was heard and the eldest 21. In 1908 he left his family in England and came to the United States, with plaintiff's consent and approval. He promised to send for them when he was able and regularly remitted money to plaintiff for their support until the last of 1913. Plaintiff testified that he was a kind and indulgent husband and father. While working in America he returned to visit them three times, the last in 1913. He left home for America on December 31st of that year with her knowledge and consent. She never saw or heard from him after that date. She testified that in 1916 she received a letter from Detroit signed by a Mr. Cook stating that her husband had recently died there after a short sickness. Relying on that information, as she stated, in 1917 she married her husband's brother with whom she admitted having previously cohabited, and who had lived with and supported her ever since. A child was born to them within three months after their marriage. Her claim for compensation is based on section 5436, 2 Comp. Laws 1915, as amended by Act No. 64, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 5436), now reading, so far as material here, as follows:

"Section 6. The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

"(a)   A wife upon a husband with whom she lives at the time of his death, or from whom, at the time of his death, the industrial accident board shall find the wife was living apart for justifiable cause, or because he had deserted her."   *   *   *

That her husband may have illegally entered into marital relations with another woman, not being known to her, furnished no justifiable cause and was immaterial.

"If she did not learn of such subsequent marriage until after his death, she could not be found to have been living apart from him for that cause." *Broadbent's Case*, 240 Mass. 449 (134 N. E. 632).

No claim is made of actual dependency.   The proof is undisputed to the contrary, but it is claimed in her behalf that she is conclusively presumed wholly dependent for support upon deceased at the time of his death on the ground she was living apart from him for justifiable cause because he had deserted her.

The findings of the two commissioners are diametrically opposite on that proposition and neither binding upon the court, because the facts are undisputed, and under the undisputed facts dependency becomes a legal conclusion.   The parties separated temporarily as then supposed by mutual consent, the last time in 1913. Separation is not of itself desertion.   His subsequent marriage was not desertion to her because she did not know it at the time nor until after his death.   Her status in living apart from him was fixed by her on or before 1917, when she married a man with whom she had previously been living in adulterous relations, and continued unaltered to the time of her husband's death. At the time that status was established subdivision (a) of section 6, part 2, only made the presumption

of dependency of a wife conclusive when she was living with her husband "at the time of his death."

A presumption is a negative or affirmative inference as to the existence of a fact which probable reasoning and common sense draw from proved surrounding facts and circumstances. The technical legal refinement which interposes a conclusive presumption directly contrary to the undisputed and conceded facts cannot avail under the circumstances of this case.

Having fixed her status in domestic relations before enactment of the law appealed to, continuing it unchanged thereafter, and it being shown by her solemn oath that she had barred herself from all domestic rights of a blameless wife by her relations with and marriage to another man, to whom she bore an offspring conceived in adultery, and with whom she continued to live as husband and wife until, and after, the death of her former husband, coupled with withdrawal of her claim at the hearing in London held at her instance, she has estopped herself from all right of recovery.

The order appealed from is reversed and the award set aside.

MCDONALD, C, J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.